UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARK MILLER,                          )
                                      )
              *Petitioner*,           )
                                      )
         v.                           )        1:25-cv-01238-JMS-KMB
                                      )
N. WILSON,                            )
                                      )
              *Respondent*.           )

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT

Mark Miller has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Filing No. 1.] He challenges a prison disciplinary proceeding in which he was found guilty of Offense B-252, Interfering With Staff, and sanctioned with a loss of one credit class (suspended, but later imposed), along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 13-5.] For the reasons explained below, the disciplinary proceeding did not violate Mr. Miller's due process rights and his habeas petition is **DENIED**.

**I.**
**LEGAL BACKGROUND**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the

disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.
### FACTUAL BACKGROUND

On October 14, 2024, Officer D. Hillebrand wrote a Conduct Report in which he stated:

> On 10/13/24 at approximately 11:47 PM, incarcerated individual Miller, Mark (137516) arrived in RSH due to interfering with staff by refusing his bed assignment in HUS E3-13L.  After I/I Miller was received into RSH, master locations changed I/I Miller's bed assignment to HUW L2-26U.  On 10/14/24 at approximately 12:17 AM, I, Officer D. Hillebrand ordered I/I Miller to leave RSH and go to his assigned bed in HUW L2-26U.  I/I Miller refused to leave RSH.  At that time I informed I/I Miller that he would [receive] a 252B report of conduct.

[Filing No. 13-2 at 1.]

Mr. Miller was notified of the charge on October 18, 2024, when he received a copy of the Conduct Report and the Screening Report.  [Filing No. 13-2 at 2; Filing No. 13-3 at 1.]  He pled not guilty to the offense, requested a lay advocate, did not request any witnesses, and requested as physical evidence "Medical Staff – (1) Do I not have a bottom bunk order? (2) When was this order put in?'"  [Filing No. 13-3 at 1.]  Screening Officer V. Afun noted on the Screening Report that Mr. Miller's request for evidence related to his bottom bunk order had been addressed.  [Filing No. 13-3 at 1.]  Also on October 18, 2024, Officer Afun emailed several Indiana Department of Corrections ("IDOC") employees stating:

> Team Medical Records,
>
> Can you please advise DHB staff[ ] if I/I Miller #137516 has a Bottom Bunk Only pass.  And if he does, when was this order/pass placed by the doctor (medical staff)?

[Filing No. 13-6 at 3.]  IDOC employee Rachel Garrison responded to Officer Afun later that day, stating: "Please see attached.  The order was put in by LPN N. Davis, however he seen Brittany White NP for this visit."  [Filing No. 13-6 at 3.]  Attached to Ms. Garrison's email is a document dated September 25, 2024, which reflects a bottom bunk order for Mr. Miller for the period from September 25, 2024 to March 25, 2025, due to "Unspecified Convulsions."  [Filing No. 13-6 at 1.]  Subsequently, Mr. Miller submitted a Notice to Lay Advocate/Witness.  [Filing No. 13-4.]

A hearing was held on October 28, 2024.  [Filing No. 13-5.]  Mr. Miller appeared at the hearing, pled guilty, and provided the following statement: "Guilty.  I was trying to explain to the Officer about bottom bunk pass.  I wasn't going to upper bunk, due to me having seizures."  [Filing No. 13-5 at 1.]  The disciplinary hearing officer ("DHO") found Mr. Miller guilty, stating as the reason for his decision: "DHB accepts your guilty plea."  [Filing No. 13-5 at 1.]  Mr. Miller was sanctioned with a loss of one credit class (suspended, but later imposed)[1], along with other non-custodial sanctions not relevant to this proceeding.  [Filing No. 13-5 at 1.]

Mr. Miller appealed to the Facility Head and his appeal was denied.  [Filing No. 13-7.]  He then brought a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  [Filing No. 1.]

---

[1] The Court originally granted Respondent's Motion to Dismiss, finding – based on evidence submitted by Respondent – that Mr. Miller's sanction of a demotion in a credit-earning class was suspended, had never been imposed, and could not be imposed in the future, so his custody was not affected by the disciplinary proceeding and, accordingly, the Court did not have jurisdiction. [Filing No. 11.]  Shortly thereafter, Respondent filed a Motion to Set Aside Judgment in which she acknowledged that prior communications submitted with the Motion to Dismiss which indicated that the suspended sanction had never been imposed were "mistaken," and that the sanction had been imposed.  [Filing No. 13 at 3.]  The Court granted Respondent's Motion to Set Aside Judgment, the case was re-opened, Mr. Miller was provided an opportunity to file a reply in support of his Petition (he did not do so), and the Petition is now ripe for the Court's consideration. [See Filing No. 14.]

### III.
### ANALYSIS

Mr. Miller raises two arguments in his Petition: (1) that although he interfered with staff, he did so based on a bottom bunk order from medical staff; and (2) that he was told that his Conduct Report would be "thrown out" if he could produce a copy of the bottom bunk order, and he did so. [Filing No. 1.]  Because his arguments are intertwined, the Court discusses them together.

In support of his Petition, Mr. Miller states:

> Attached is a copy of the bottom bunk pass.  Also all the actions I have taken to try to appeal the Conduct Report at the facility level they refuse to answer my appeal. They refuse to give me copies or even talk to me about the matter!
>
> I was told by Screening Officer that if I could produce an active bottom bunk pass this Conduct Report would be thrown out.  He tried to call medical but could not reach anyone so told me he would contact them.  I have an active bottom bunk pass. See attached.  At the hearing I tried to tell the hearing officer I was guilty of refusing housing because I had a bottom bunk pass and showed him.  He still found me guilty of interfering with staff.

[Filing No. 1 at 3-4.]  Mr. Miller also provides a timeline related to his attempts to appeal the finding of guilty and states that he has "done everything in [his] power to [follow] the guidelines set to appeal [his] Conduct Report.  The facility refuse[d] to answer."[2]   [Filing No. 1 at 8.]

The Respondent re-characterizes Mr. Miller's grounds for relief as whether some evidence supported the DHO's finding of guilt.  [Filing No. 13-1 at 5.]  The Respondent relies on the Conduct Report, asserting that it "explains [Mr.] Miller was ordered to go to his assigned bed and [he] refused to leave the restrictive housing unit."  [Filing No. 13-1 at 6.]  The Respondent notes that Mr. Miller pled guilty and "agrees he refused to go to his assigned bed."  [Filing No. 13-1 at 6.]

---

[2] The Respondent acknowledges that Mr. Miller has exhausted his administrative remedies.  [Filing No. 13-1 at 2.]

4

The Respondent asserts that "[t]he conduct report and [Mr.] Miller's statement support the inference that by refusing to go to his assigned bed he interrupted the regular transfer process and interfered with the officers' ability to manage the behaviors on the unit." [Filing No. 13-1 at 6.] The Respondent argues further that the DHO had the bottom bunk order at the hearing, so "considered and rejected" Mr. Miller's defense based on the order and that "by pleading guilty and admitting to the charge at the disciplinary hearing, [Mr.] Miller essentially waived his rights…to any challenge that there was not some evidence of his guilt." [Filing No. 13-1 at 6-7 (quotation omitted).] The Respondent contends that Mr. Miller pled guilty at the disciplinary hearing "without indicating any promises had been made" to dismiss the charge; that he did not argue at the disciplinary hearing that his refusal to go to his new bed was excused because he had a bottom bunk order; and that any argument that the DHO improperly treated his statement at the disciplinary hearing as a guilty plea is without merit. [Filing No. 13-1 at 7-9.]

Mr. Miller did not file a reply.

The Court agrees with the Respondent that Mr. Miller's argument regarding his bottom bunk order providing justification for interfering with staff is best categorized as one challenging the sufficiency of the evidence. In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . .

5

is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

Offense B-252 is defined as "[b]ehavior that delays or interrupts a staff member from the performance of their assigned duties."  [Filing No. 13-8 at 8.]  Mr. Miller acknowledges that he interfered with staff, but argues that his interference was justified because he had a bottom bunk order and was being ordered to move to a top bunk.  He also argues that he was promised that his disciplinary proceeding would be dropped if he could produce a bottom bunk order, and that he did so.  The problem with Mr. Miller's arguments is that a habeas proceeding focuses on whether the petitioner received due process during his disciplinary hearing.  The Conduct Report detailed the circumstances surrounding Mr. Miller's interference with staff when he was reassigned to a top bunk, [*see* Filing No. 13-2 at 1 ("On 10/14/24 at approximately 12:17 AM, I, Officer D. Hillebrand ordered I/I Miller to leave RSH and go to his assigned bed in HUW L2-26U.  I/I Miller refused to leave RSH.  At that time I informed I/I Miller that he would [receive] a 252B report of conduct.")] That alone is sufficient evidence to support Mr. Miller's conviction of Offense B-252.

But it is especially significant that Mr. Miller pled guilty at his disciplinary hearing, and that the DHO specifically based his guilty finding on Mr. Miller's plea.  [*See* Filing No. 13-5 at 1.] A guilty plea is also sufficient to support the DHO's finding of guilt.  *See United States v. Loutos,* 383 F.3d 615, 619 (7th Cir. 2004) ("A guilty plea admits, in legal effect, the facts as charged."); *Chapman v. Superintendent, Miami Corr. Facility*, 2013 WL 228921, at *2 (N.D. Ind. Jan. 22, 2013) (finding that guilty plea constituted some evidence that petitioner committed offense and noting that "[b]y pleading guilty to A117, assault with serious injury, [petitioner] admitted the elements of the offense").

As to Mr. Miller's argument that he interfered with staff because he had a bottom bunk order and assigning him to a top bunk was contrary to that order, it appears that the DHO had Mr. Miller's bottom bunk order at the hearing, and still found Mr. Miller guilty of interfering with staff. [*See* Filing No. 13-6.]  The Court is not aware of any caselaw standing for the proposition that a petitioner's due process rights are violated when he is found guilty of an offense to which he pleads guilty, but the commission of the offense was somehow justified.

Mr. Miller also argues that he was promised that the Conduct Report would be dropped if he could produce a copy of his bottom bunk order, and that he did so.  But he has not presented any evidence that such a promise was made, other than his own allegation – which is not sufficient. *See Wykoff v. Resig*, 613 F. Supp. 1504, 1508 (N.D. Ind. 1985) (petitioner's constitutional rights were not violated during disciplinary proceeding, despite his claim that he was promised something in exchange for guilty plea, where petitioner had not "produced any other evidence or testimony rather than his own testimony showing that a promise was made to him for his plea of guilty").  The DHO's findings do not reflect that such a promise was made and there is no evidence that Mr. Miller informed the DHO of such a promise at the disciplinary hearing.

The Court acknowledges the unfortunate circumstances surrounding Mr. Miller's discipline – he was ordered to move to a top bunk, which was contrary to an existing order that he be housed on a bottom bunk due to convulsions.  But the fact remains that Mr. Miller interfered with staff when they attempted to move him and then pled guilty to interfering with staff.  The Court's sole focus is whether Mr. Miller's due process rights were violated during the disciplinary proceeding and, based on these circumstances, it concludes that they were not.

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Miller to the relief he seeks. Accordingly, Mr. Miller's Petition for a Writ of Habeas Corpus, [1], is **DENIED** and the action **DISMISSED**. Judgment consistent with this Order shall now issue.

Date: 3/17/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution:**

Mark Miller
#137516
Plainfield Correctional Facility
Inmate Mail/Parcels
727 Moon Road
Plainfield, IN 46168

**Electronic Service to:**

Indiana Attorney General
Indiana Department of Correction

8